```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA,

         v.                          13 Cr. 890 (RPP)

ELFEGO BOYD,

    a/k/a "Kush da Dawn,"

              Defendant.
- - - - - - - - - - - - - - - - X
```

**Defendant Elfego Boyd's Sentencing Memorandum**

This sentencing memorandum is submitted on behalf of defendant Elfego Boyd ("Mr. Boyd" or "defendant") to aid the Court in fashioning a fair and just sentence that complies with 18 U.S.C. § 3553(a).

We respectfully submit that for the reasons that are fully developed below, a sentence based on the Probation Office's proposed calculation under the Guidelines would be excessive and unreasonable, especially for a defendant such as Mr. Boyd who has no prior criminal history. Instead, we respectfully submit that based on the facts of this case, Mr. Boyd's family background and personal history, including his documented learning disabilities, and the goals of the federal sentencing regime, the ten-year mandatory minimum sentence that is required by law is sufficient but not greater than necessary to achieve the purposes of sentencing.

II. **The Plea Agreement**

On June 25, 2014, Mr. Boyd pled guilty to Count Two of the Indictment, which charged him and a co-defendant with sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a) & (b)(2). Pursuant to the terms of the plea agreement, the parties stipulated that Mr. Boyd's offense level was 33 and that he was in criminal history category I.  Plea Agreement, June 13, 2014, at 3. The Probation Office's Guideline calculation is the same as the stipulations in the parties' plea agreement. Presentence Report, Oct. 6, 2014 ("PSR") ¶¶ 38, 46.

III. **Defendant's Characteristics and Personal History**

A. Defendant's Childhood in Jamaica

Mr. Boyd, who will be 29-years old at the time of sentencing, is married and resides in the Bronx, New York with his wife, mother and stepsister. Mr. Boyd was born in Jamaica and emigrated to the United States in 1995. Mr. Boyd had a difficult childhood growing up in Jamaica. His mother raised him in Manchester, Jamaica until he was five years old, and then she left him with his father because she was struggling financially. PSR ¶ 54.  Mr. Boyd's father, who worked as a police officer in Jamaica, failed to take proper care of his son and Mr. Boyd's mother returned after three months to regain custody of him. PSR

¶¶ 52, 54. Mr. Boyd did not see his father again until 1999, when he briefly met his father during a visit to Jamaica. PSR ¶ 54.  Defendant's father never provided his mother with any child support, and the family struggled financially when they lived in Jamaica.

In 1993, Mr. Boyd's mother, Yvette Brewster, immigrated to the United States to find work. Mrs. Brewster left her son in Jamaica in the care of his maternal aunt and uncle. PSR ¶ 54. Mr. Boyd's aunt and uncle earned minimal income selling spices at a market and the family continued to struggle financially. PSR ¶ 54.  In 1995, Mr. Boyd joined his mother in the United States.

B. Defendant's Educational History

While in Jamaica, Mr. Boyd did not attend school regularly, and when he came to the United States and enrolled in school here he immediately began to experience difficulties. PSR ¶ 64.  Mr. Boyd exhibited numerous learning disabilities, including delayed speech, difficulty reading and writing, hyperactivity and social adjustment problems. *Id.* Because of his learning disabilities, Mr. Boyd attended special education classes from elementary through high school, and he was often teased and harassed by his classmates and others. PSR ¶ 64. While in elementary school, Mr. Boyd attended weekly counseling sessions. PSR

64. Although Mr. Boyd "officially" graduated from high school, it is apparent from his lack of rudimentary skills that he was the product of social promotion and got promoted, in part, because he was an exceptional basketball player on the school team.

According to Mr. Boyd's mother, he does not "have [the] capability to do what he thinks he can do" and he is a "follower and not a leader." PSR ¶ 57.[1]  Mrs. Brewster also believes that the absence of defendant's father in his life played a critical role in her son's development. PSR ¶ 57.  According to Mrs. Brewster, Elfego has always been a "loving, respectful and helpful" son who cared for his family and worked his entire life. *Id.*  Mrs. Brewster was "shocked and devastated" when her son was arrested and she expressed concern for her son's safety in prison because he is naïve and gullible. PSR ¶ 58.

C. <u>Defendant's Employment History</u>

Mr. Boyd has a steady employment history, beginning in 2004 when he was still in high school. PSR ¶ 80. Defendant has held various jobs, including security guard, selling tickets for a local comedy club, installing telephones and

---

[1] The Presentence Report supports defendant's mother's contention that he is a "follower and not a leader." Minor Victim-1 told the agents in this case that Mr. Boyd had a "manager" who collected the cash proceeds from the illegal sexual activities. PSR, Oct. 6, 2014 ¶ 16.

4

televisions in a hospital and being a ticket agent for a number of New York City based tour companies. PSR ¶¶ 72-81.

### D. Substance Abuse

Mr. Boyd has a long history of drug abuse, which undoubtedly affected his judgment and resulted in the instant conviction. Mr. Boyd began drinking alcohol with friends when he was 15-years old. PSR ¶ 66. A year later, defendant began smoking marijuana daily. Mr. Boyd's drug use continued to escalate, and he began using Ketamine three times per week when he was 18 or 19-years old. At the age of twenty-three, Mr. Boyd was snorting cocaine four to five times per week, and when he was 25-years old he began using heroin and ecstasy. PSR ¶ 66. The Indictment alleges that Mr. Boyd's criminal behavior begin in or about 2010, about the time when he began using heroin and ecstasy. In light of Mr. Boyd's long history of substance abuse, we submit that it would benefit him to participate in the United States Bureau of Prison's 500-hour Residential Drug Abuse Program.

### E. Letters Attesting to Mr. Boyd's Character

It is apparent from the numerous character letters that Mr. Boyd has submitted to the Court that he is beloved in his home and the community. Violent Lewis, a social worker, states that Elfego is "loyal [and] trust-worthy"

and that she had never known him to be "malevolent, aggressive or violent." Valerie Brewster, Mr. Boyd's stepsister, states that Elfego is an "outstanding young man" who is "very thoughtful and respectful of others." Ms. Brewster is also convinced that Elfego will do extremely well if given a second chance, and she indicates that he has the unconditional love and support of his family.

Pastor Dennis Rowe, of the Bible Way Apostolic Church, has known Mr. Boyd since he was a "babe." According to the Pastor, Mr. Boyd is humble, well mannered and grew up in the church and displayed Christian-like principles. Pastor Rowe states that Elfego has always been quiet and soft spoken, even when his peers bullied him.

Delores Facey, who has known Mr. Boyd and his family for over 14-years, states that he is a hardworking man who was adversely impacted because he did not have his father in his life when he was growing up. Andrea Wright has also known Mr. Boyd and his family for over 14-years. Ms. Wright, like many of the other people attesting to Mr. Boyd's character, states that he is a hard worker who was always there for his mother, especially when she suffered a spinal injury, became disabled and was unable to work. Ms. Wright said that Elfego is one of the "sweetest boys" that she has ever come across. During the time that Ms. Wright

has known Elfego, she never observed any violent of aggressive behavior from him.

Shanique Lee, a longtime friend and co-worker of Mr. Boyd's, writes that he was one of the top employees at Skyline Tours. According to Ms. Lee, Mr. Boyd is motivated, ambitious and has tremendous potential. The most insightful character letter comes from Yvette Brewster, Mr. Boyd's mother. Mrs. Brewster states that her son had a hard life and has experienced a lot. During the first 10-years of his life, Mr. Boyd lived in Jamaica and was considered an "outcast" since his mother was not there to take care of him. Mrs. Brewster said that while in Jamaica, her son was viewed as a "delinquent" because the schools lacked the resources and were not equipped to deal with her son's learning disabilities. When her son finally came to the United States, he continued to experience problems and had difficulty adjusting to life in this country because of his learning disabilities. Mrs. Brewster said that her son became withdrawn and he was much older than the other children in the special education programs, which made him an easy target and exacerbated his problems.

The remaining character letters paint Mr. Boyd as a family-oriented, hardworking individual who treated everyone with respect and never caused any problems.

IV. **A Suggested Appropriate Sentence Under the Facts and 18 U.S.C. § 3553(a)**

Before imposing sentencing, the Court must form its own view of the nature and circumstances of the offense and the history and characteristics of the defendant after considering the factors set forth in 18 U.S.C. § 3553(a)(1). *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008)(*en banc*). Among the § 3553 factors that the district court must consider before imposing a sentence are the need to: (a) reflect the seriousness of the offense, promote respect for the law and provide just punishment; (b) afford adequate deterrence to criminal conduct; (c) protect the public from further crimes by the defendant; and (d) provide the defendant with needed training, treatment or care. 18 U.S.C. § 3553(a)(2)(A-D).

The court must also take into account the kinds of sentences available; any pertinent Guidelines policy statements; the need to avoid unwarranted sentence disparities among similarly situated defendants; and, where applicable, the need to provide restitution to any victims. *Cavera*, 550 F.3d at 189, *citing* 18 U.S.C. § 3553(a)(7). The district court is required to conduct its own independent review of the § 3553(a) factors, aided by the arguments of the prosecution and defense, in order to reach an informed and individualized judgment as to what is "sufficient but

8

not greater than necessary" to fulfill the purposes of sentencing. *United States v. Marino*, 309 Fed. Appx. 523, 524 (2d Cir. 2009).

Based on the facts before the Court and the assessment of the § 3553(a) factors, we respectfully submit that a sentence within the Guideline range set forth in the PSR (135 to 168 months) would be excessive and unreasonable. Instead, we respectfully submit that a non-Guidelines sentence that takes into account all of the facts detailed above would be more appropriate. We further submit that the statutory mandatory minimum sentence in this case, 120-months imprisonment, would be "sufficient, but not greater than necessary" to fulfill the objectives of § 3553(a). In support of Mr. Boyd's request for a 120-month sentence, defendant addresses the following objectives of 18 U.S.C. § 3553:

1. <u>Punishment</u>

Mr. Boyd is a first felony offender and has not served any prior time in prison. Mr. Boyd's only other contact with the criminal justice system was for a minor marijuana offense, which was ultimately dismissed. PSR ¶ 49.  A sentence of 120-months imprisonment would fulfill the first objective of 18 U.S.C. § 3553(a) by providing Mr. Boyd with just sufficient punishment for his criminal behavior. When

9

Congress set a mandatory minimum sentence for violations of 18 U.S.C. § 1591(a) & (b)(2), it must have thought that ten years imprisonment, especially for first felony offenders, was sufficient punishment. A ten year term of imprisonment is an extremely long sentence for a first felony offender such as Mr. Boyd who has a steady employment history and is recognized by all his character references as a hardworking, ambitious individual.

    2. Deterrence

A 120-month term of imprisonment would also satisfy the second objective of § 3553(a) by providing sufficient deterrence. There are two aspects to deterrence under § 3553(a): general deterrence and specific deterrence.  A ten-year sentence would send a strong message to the general public that individuals involved in sex trafficking crimes with minors will receive lengthy sentences upon conviction. There can be little dispute that the general public would consider a ten-year sentence as ample punishment for a first felony offender. A ten-year sentence would also have a strong deterrent effect on Mr. Boyd, who has never been incarcerated prior to this incident.

    3. Incapacitation

We submit that the statutory mandatory minimum term of imprisonment is also sufficient to protect the public from

10

further crimes by Mr. Boyd. For at least ten years, Mr. Boyd would be incarcerated and unable to engage in any criminal activity that would affect the public. Even after he is released from prison, Mr. Boyd will be on supervised release and his behavior will be closely monitored to ensure that he does not revert to criminal behavior. In addition, the Probation Office has recommended that the Court impose a number of special conditions that will ensure that Mr. Boyd does not engage in any similar criminal activity upon his release from prison. For example, Probation has recommended that Mr. Boyd be prohibited from having any deliberate contact with any child under 17-years of age unless approved by his probation officer, and that any electronic device under his control be subject to random searches by Probation. *See* PSR at 23. The Probation Office has also recommended that any social media accounts under his control, including Facebook, Instagram, Kik and Backpage, be subject to random searches. *Id.*

    4. <u>Rehabilitation and Treatment</u>

    A 120-month term of imprisonment would also provide sufficient time for Mr. Boyd to obtain much needed vocational training and drug treatment. In light of Mr. Boyd's lack of prior criminal history, his steady

11

employment history, his personal characteristics and his strong family support, we submit that Mr. Boyd would respond extremely well to the rehabilitation programs that will be available to him in prison.

V.  **Pretrial Confinement Under Harsh Conditions**

Mr. Boyd has been incarcerated for approximately 14-months since his arrest on October 16, 2013. Since his arrest, Mr. Boyd has been housed at the Metropolitan Correctional Center ("MCC") in Manhattan.  As the Court may be aware, the MCC is notoriously overcrowded. Courts in this district have recognized that overcrowded and unsanitary conditions at the MCC and other detention facilities can be grounds for leniency at sentencing. *See, e.g., United States v. Mendola*, 03 Cr. 449 (S.D.N.Y. 2005)(Judge Wood reduced defendant's sentence and noted that the MCC was overcrowded, unsanitary and had inadequate bathroom facilities and medical care); *see also United States v. Francis,* 129 F. Supp. 612, 616-18 (S.D.N.Y. 2001)(discussion of the harsh conditions at Hudson County Correctional Complex); *United States v. Carty*, 264 F.3d 191, 196 (2d Cir. 2001)(Pre-trial confinement conditions may in appropriate cases be a permissible basis for lower sentences).

While Mr. Boyd's adjustment to incarceration has not been without incident, his disciplinary infractions can be attributed to the crowded conditions at the MCC and his learning disabilities, which make him an easy target for other aggressive inmates. As the PSR indicates, Mr. Boyd had a fight with another inmate in May 2014. Mr. Boyd was forced to defend himself when the other inmate kept bullying him and stole his commissary. Mr. Boyd was also cited for the Introduction of Contraband and the Use of the Telephone to Further Criminal Activity for asking his stepsister to bring him K2 (synthetic marijuana) and tobacco. PSR ¶ 12. While Mr. Boyd admitted to the conduct and willingly accepted the punishment issued by the BOP, his family informed me that he was acting at the request of another inmate who asked him to have someone pick up the substances and deliver them to the jail.  Mr. Boyd's learning disabilities and easy going personality make him easy prey for other inmates because he is naïve and is always trying to please others.  Mr. Boyd recognizes that his behavior was wrong and he is not attempting to make any excuses for his behavior while detained at the MCC.

VI. **The Applicable Legal Standards and the Facts Before the Court**

Following *Booker*, a district court can no longer presume that a sentence within the applicable Guidelines

13

range is reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009). Instead, the court must form its own view of the nature and circumstances of the offense and the history and characteristics of the defendant after considering the factors set forth in 18 U.S.C. § 3553(a)(1). *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008)(*en banc*). A sentencing court is required to treat the Guidelines as a starting point, and then to determine an appropriate sentence after taking a full account of the history and characteristics of the defendant. *United States v. Preacely,* 628 F.3d 72, 84 (2d Cir. 2010).

The district court is required to conduct its own independent review of the § 3553(a) factors, aided by the arguments of the prosecution and defense, in order to reach an informed and individualized judgment as to what is "sufficient but not greater than necessary" to fulfill the purposes of sentencing. *United States v. Marino*, 309 Fed. Appx. 523, 524 (2d Cir. 2009). In the post-*Booker* world, a sentencing judge "has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008)(*en banc*).

Under the facts before this Court, particularly that Mr. Boyd is a first felony offender who has never been

14

convicted of a criminal offense or served any prior time in prison, we respectfully submit that the imposition of a Guidelines sentence would be unduly harsh and would not serve the goals of § 3553(a). Instead, we submit that a variance is warranted under these facts and that the Court should impose the mandatory minimum sentence of 120-months imprisonment. As noted above, a ten-year sentence for a first felony offender with no prior criminal history is "sufficient but not greater than necessary" to fulfill the purposes of sentencing.

VII. **Conclusion**

For the foregoing reasons, the Court should sentence Mr. Boyd to a term of 120-months imprisonment. We also respectfully request that the Court recommend that Mr. Boyd be designated to FCI Fort Dix, a facility that can provide ample educational and vocational opportunities for defendant, and is close to the New York metropolitan area where the majority of defendant's family resides. We also

request that the Court recommend that Mr. Boyd participate in the BOP's 500-hour Residential Drug Abuse Program.

Dated: New York, New York
       December 27, 2014

                                         Respectfully submitted,

                                                /s/

                                        Roland R. Acevedo (RA-8915)
                                        Scoppetta Seiff Kretz &
                                         Abercrombie
                                        444 Madison Ave, 30th fl.
                                        New York, New York 10022
                                        (212) 371-4500

                                        Counsel for Elfego Boyd


cc: AUSA Gina Castellano (via ECF)
    Elfego Boyd (via mail)