UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

ELFEGO BOYD,

        Defendant.

13 Cr. 890 (RPP)

**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA CONCERNING ELFEGO BOYD**

PREET BHARARA
United States Attorney for the
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007

Gina Castellano
Assistant United States Attorney
   *Of Counsel*

The Government respectfully submits this memorandum in advance of the sentencing of Elfego Boyd (the "defendant"), which is scheduled for January 8, 2015 at 10:00 a.m., and in response to the defendant's sentencing submission dated December 27, 2014. As discussed more fully below, the defendant placed and paid for advertisements offering Victim-1 – who was 15 and 16 years old at the time – for commercial sex on backpage.com, a classifieds webpage commonly used by sex traffickers acting as pimps. When men responded to the advertisements, the defendant directed Victim-1 to engage in commercial sex, sometimes driving Victim-1 to hotels to engage in the sex acts, and always taking all of the money paid to Victim-1. As a result of this deplorable conduct, the defendant pleaded guilty in this case to sex trafficking of a minor victim from in or about September 2010 through in or about November 2011, in violation of Title 18, United States Code, Section 1951(a) and (b)(2). The applicable Sentencing Guidelines range, as stipulated to in the defendant's plea agreement with the Government, is 135 to 168 months' imprisonment with a mandatory minimum sentence of 10 years' imprisonment. The Government also submits that the defendant should be ordered to pay $108,000 in mandatory restitution.

For the reasons set forth below, the Government respectfully submits that a sentence within the Guidelines Range of 135 to 168 months' imprisonment should be imposed. In light of the very serious nature and circumstances of the offense, which irreparably traumatized Victim-1, and the need for the sentence imposed to promote respect for the law, deter this conduct by others, provide just punishment for the offense, and protect the public from the defendant, such a sentence would be sufficient, but not greater than necessary.

## I. The Relevant Offense Conduct

Victim-1 first met the defendant in New York, New York in September 2010 when Victim-1 was just 15 years old. (Presentence Investigation Report ("PSR") ¶ 14.) The defendant asked Victim-1 to prostitute for him and she agreed. (*Id.*) While temporarily living with the defendant, the defendant introduced Victim-1 to Norman Darby, his co-defendant in this case.[1] (*Id.*) The defendant and Darby placed advertisements on backpage.com, offering Victim-1 for sex. (*Id.*) Backpage.com is commonly used for the advertisement of commercial sex by sex traffickers working as pimps. (*Id.*) The advertisements did not receive any responses and Victim-1 left New York. (*Id.*)

In the spring of 2011, Victim-1 returned to New York and again encountered the defendant. (*Id.* ¶ 15.) The defendant and Victim-1 temporarily lived at the defendant's apartment in the Bronx, New York. (*Id.*) Although the defendant told Victim-1 that they were boyfriend and girlfriend, the defendant posted advertisements on backpage.com offering Victim-1 for sex in exchange for money. (*Id.*) At the defendant's direction, Victim-1 engaged in sex acts with multiple men who responded to the backpage.com advertisements. (*Id.*) Victim-1 did not keep any of the proceeds from the sex acts – she gave all of the proceeds to the defendant. (*Id.*)

Some time thereafter, the defendant took Victim-1 to a house in Long Island (the "Long Island House"), where she stayed with the defendant, Darby, and another co-conspirator ("CC-1") for several months. (*Id.* ¶ 16.) During that time, Darby and Victim-1 posted advertisements on backpage.com offering Victim-1 for sex in exchange for money. (*Id.*) On several occasions,

---

[1] Darby pleaded guilty to conspiracy to commit sex trafficking of minors, in violation of Title 18, United States Code, Section 1594(c). He is scheduled to be sentenced before Your Honor on January 19, 2015.

the defendant gave Victim-1 a credit card issued in his name to pay for the backpage.com advertisements. (*Id.* ¶ 17.) The defendant's bank account records reveal multiple purchases for advertisements on backpage.com. (*Id.* ¶ 19.) When men responded to the advertisements, the defendant, Darby, and CC-1 drove Victim-1 to hotels in the vicinity of the Long Island House to engage in sex acts with the men. (*Id.* ¶ 16.) Victim-1 always gave all of the money paid to her to the defendant. (*Id.*) Victim-1 understood that Darby was the defendant's manager, and watched the defendant hand the money to Darby. (*Id.*)

After several months at the Long Island House, the defendant returned to New York City with Victim-1. (*Id.* ¶ 18.) At the defendant's direction, Victim-1 continued to engage in commercial sex with men responding to the backpage.com advertisements and continued to give all of the earnings to the defendant. (*Id.*) In November 2011, Victim-1 ran away from the defendant, but the defendant was not deterred. (*Id.*) He and Darby contacted Victim-1 and solicited her to return to work as a prostitute. (*Id.* ¶ 19.)

Victim-1, who turned 16 years old during the time she worked as a prostitute for the defendant, told the defendant her age. (*Id.* ¶ 18.) And, defendant allocuted during his plea proceeding that he "knew that [Victim-1] was under the age of 18." (Plea Transcript at 13: 16-20.)

In the spring of 2013, the defendant told Victim-1 that he was still prostituting girls using backpage.com and a text-messaging interface, Kik. (PSR ¶ 21.) In September 2013, after Victim-1 had turned 18 years old, the defendant sent text messages to Victim-1 asking her to return to New York to work for him as a prostitute. (*Id.*)

## II. Prior Criminal Conduct

Although not part of the offense conduct, the Court should be aware of and consider the defendant's sex trafficking of additional minor victims in 2012. In May of 2012, law enforcement received a call from a hospital official regarding a 15-year-old girl ("Victim-2"), who was possibly the victim of sex trafficking. (*Id.* ¶ 40.) Law enforcement learned from Victim-2 and a 17-year-old girl ("Victim-3"), that they met the defendant in Manhattan. (*Id.* ¶ 41-43.) Similar to his trafficking of Victim-1, the defendant accompanied Victim-2 and Victim-3 to an apartment in the Bronx, New York, took pictures of them, and posted those pictures on backpage.com, offering sex with them in exchange for money. (*Id.*) At the defendant's direction, Victim-2 and Victim-3 engaged in commercial sex with men who responded to the advertisements. (*Id.*) Unlike his conduct with Victim-1, the defendant kept half of the money earned by Victim-2 and Victim-3 for the commercial sex and gave the other half to Victim-2 and Victim-3. (*Id.* ¶ 41.)

## III. The Appropriate Sentence

### A. Guidelines Calculation

The PSR calculated a total offense level of 33 and a criminal history category of I. (*Id.* ¶ 9.) The resulting Guidelines range is 135 to 168 months' imprisonment, with a mandatory minimum term of imprisonment of 10 years. (*Id.*) The parties stipulated to this Guidelines range in the defendant's plea agreement with the Government. (Plea Agreement, June 13, 2014, at 3.) The U.S. Probation Office recommends a sentence of 151 months' imprisonment. (PSR at 20.)

## B. The Serious Nature of the Defendant's Sex Trafficking Offense Warrants a Guidelines Sentence

The nature and circumstances of the offense are extremely serious. The defendant engaged in the sex trafficking of a 15-year-old girl – Victim 1 – whom the defendant knew was under 18 years old when he had her work as a prostitute for his own profit. The defendant unduly influenced Victim-1 to engage in prostitution, used internet advertisements to solicit men to pay for sex with Victim-1, and drove her to various hotels to engage in the sex acts with these men. Moreover, although defendant pleaded guilty to the sex trafficking of only Victim-1, he has victimized additional minors.[2] As detailed above, Victim-2 and Victim-3, 15 years-old and 17 years-old respectively at the time, engaged in commercial sex at the defendant's direction. And, in the spring of 2013, the defendant told Victim-1 that he was still prostituting girls, not only using backpage.com to advertise, but also through Kik, a text-message platform. The defendant preyed on vulnerable members of our society. His depraved behavior requires substantial punishment.

The submission filed on behalf of the defendant does not present any arguments or facts that justify a below-Guidelines sentence. The defendant's submission seeks leniency on two principal grounds: (i) the defendant's difficult childhood; and (ii) the defendant's lack of prior criminal history. The defendant emphasizes his learning disabilities and that he attended special education classes, but acknowledges that he officially graduated high school and was a star

---

[2] Indeed, in his plea agreement with the Government, the defendant agreed to make full restitution to the individuals identified as Victim-1, Victim-2, and Victim-3. (Plea Agreement at 2.) During his plea proceeding, Magistrate Judge Dolinger specifically asked the defendant if he understood that he was agreeing to make restitution to Victim-1, Victim-2, and Victim-3. The defendant represented to the Court that he understood. (Plea Transcript at 11:23-12:8.)

basketball player on his school's team. (Def. Sentencing Mem. at 3-4.) The defendant highlights that his family struggled financially when he lived in Jamaica, but, as detailed in the PSR, the defendant experienced no financial difficulties in the United States, where he has lived since 1995 when he was approximately 9 years old. (*Id.* at 2-3; PSR ¶ 55.) Indeed, the defendant touts that he "has a steady employment history, beginning in 2004 when he was still in high school." (Def. Sentencing Mem. at 4-5.) The fact that the defendant committed the instant offense deliberately while otherwise engaged as a productive member of society is not a mitigating factor. Rather, in the Government's view, these circumstances further counsel in favor of a Guidelines sentence. The defendant did not resort to criminal conduct as a result of dire financial need, but rather out of greed and perhaps even a depraved enjoyment of the sexual exploitation of girls.

The defendant also seeks leniency because he is a first-time felony offender. The Court should reject this argument because the defendant's criminal history is already accounted for in the Guidelines calculation and the defendant's criminal history has no bearing on the serious nature and circumstances of the instant offense – the defendant's sex trafficking of a minor for at least 14 months. Moreover, the defendant has not learned his lesson and continues to attempt to engage in criminal activity from prison. The defendant has received two incident reports since October 16, 2013, when his incarceration at the Metropolitan Correctional Center (the "MCC") began. (PSR ¶ 11.) In May 2014, the defendant was cited for fighting with another inmate and sanctioned accordingly. (*Id.*) In or around July 2014 the defendant asked his stepsister to bring synthetic marijuana and tobacco to him at the MCC and she attempted to do so. (*Id.* ¶ 12.) The

defendant was cited for and admitted to the introduction of contraband and use of the telephone to further criminal activity. (*Id.* ¶ 12; Def. Sentencing Mem. at 13.)

## C. Restitution and Forfeiture

The Government requests that the Court order the defendant to pay $108,000 in mandatory restitution. The minor victims of the defendant's sex trafficking crimes are entitled to be "made whole for their losses." *See United States* v. *Cortes-Castro*, 511 Fed. App'x 942, 947 (11th Cir. 2013). Indeed, Congress unequivocally mandated restitution in cases of peonage, slavery, and trafficking for the "full amount of the victim's losses" when it passed the Trafficking Victims Protection Reauthorization Act, codified (in relevant part) at Title 18, United States Code, Section 1593(b)(1).

The "full amount of the victim's losses" is defined as the sum of two components: (1) ill-gotten gains, plus (2) the full amount of the victim's losses, defined as, among other things, lost income. *See In re Sealed Case*, 702 F.3d 59, 66 (D.C. Cir. 2012); *see also* 18 U.S.C. § 2259(b)(3) (incorporated by reference in 18 U.S.C. § 1593(b)(3)). Furthermore, Title 18, United States Code, Section 1593(b)(3) expressly provides that the amount of restitution must include "the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act." *See United States* v. *Mammedov*, 304 Fed. App'x 922, 927 (2d Cir. 2008). "[T]he express terms of 18 U.S.C. § 1593 require that the victims in this case, i.e., persons who engaged in commercial sex acts within the meaning of 18 U.S.C. § 1591, receive restitution, notwithstanding that their earnings came from illegal conduct." *Id.*

The amount of restitution need not be proven with exactitude; rather the district court's duty is to estimate the amount, based upon facts in the record. *See In re Sealed Case*, 702 F.3d at 66.

7

## CONCLUSION

For the reasons set forth above, the Government respectfully urges the Court to impose a substantial sentence within the Guidelines Range of 135 to 168 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purpose of sentencing, and order mandatory restitution.

Dated: New York, New York
December 31, 2014

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York

By: *Gina Castellano*
Gina Castellano
Assistant United States Attorney
(212) 637-2224

cc: Roland R. Acevedo (via ECF)